BANILLA GAMES, INC., )
)
        Plaintiff, )
)     JURY TRIAL DEMANDED
        v. )
)
MAWFAK TAWFIQ, )
)
        Defendant. )
)

## COMPLAINT

Plaintiff Banilla Games, Inc. ("**Banilla**" or "**Plaintiff**"), by counsel, states the following as its Complaint against Defendant Mawfak Tawfiq ("**Tawfiq**" or "**Defendant**").

## NATURE OF THE CASE

1. Over the last decade, Banilla has firmly established itself as a prominent leader in the skill-based gaming and amusement industry. Banilla is widely recognized for its innovation and commitment to quality, attributes that have earned the company a strong reputation among distributors, route operators, players, and industry participants alike. Banilla markets its flagship suite of video gaming systems under the "FUSION" brand ("**FUSION Games**"). Banilla has invested substantial time, effort, and resources in developing and protecting its brand and intellectual property, including the FUSION Games, and is committed to safeguarding these valuable assets.

2. This is a civil action arising from Defendant's willful and deliberate infringement of Banilla's intellectual property rights, including, but not limited to, its exclusive rights in and to the FUSION brand of video gaming systems. Defendant has engaged in the unauthorized use,

reproduction, and distribution of counterfeit versions of Banilla's products and exploitation of the following trademarks owned by Banilla (collectively, the "**Banilla Marks**"):

 a. the North Carolina registered FUSION trademark (the "**FUSION Mark**");

 b. the federally registered BANILLA GAMES trademark (the "**BANILLA GAMES Mark**");

 c. the federally registered PLUNDERIN' PIRATES trademark and PLUNDERIN' PIRATES stylized trademark (the "**PLUNDERIN' PIRATES Marks**");

 d. the federally registered GORGON TREASURES OF GREECE trademark (the "**GORGON TREASURES OF GREECE Mark**");

 e. the federally registered OFFSHORE ANGLER trademark (the "**OFFSHORE ANGLER Mark**"); and

 f. the federally registered TERROR TAVERN trademark (the "**TERROR TAVERN Mark**").

Defendant's conduct violates Banilla's exclusive rights in the Banilla Marks.

3. Banilla brings claims for copyright infringement pursuant to the United States Copyright Act of 1976, as amended (the "**Copyright Act**"), 17 U.S.C. § 101 *et seq*. These claims arise from Defendant's purchase, offer for sale, distribution, marketing, public display, and commercial exploitation of counterfeit FUSION Games, which reproduce, copy, and are substantially similar to—and therefore, infringe—Banilla's copyrighted works. Banilla seeks all remedies available under the Copyright Act, including, but not limited to, preliminary and permanent injunctive relief, recovery of Banilla's actual damages and Defendant's profits

2

attributable to the infringing conduct or statutory damages, and such other monetary and equitable relief as the Court deems just and proper.

4.      Banilla further asserts claims under the Lanham Act, 15 U.S.C. § 1051 *et seq.* for trademark counterfeiting and infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims of unfair competition and trademark infringement under the statutory and common law of North Carolina.

5.      The Banilla Marks, which are inherently distinctive and have acquired substantial secondary meaning in the marketplace, signify to consumers the high quality and origin of Banilla's products in the various nudge, skill, redemption, and amusement game markets, are valid, protectable, and enforceable under federal and state law.

6.      In addition, Banilla's copyrights registrations are valid, subsisting, and enforceable.

7.      These intellectual property assets embody the substantial goodwill and reputation that Banilla has developed over many years through continuous use in commerce, and they belong exclusively to Banilla.

## THE PARTIES

8.      Banilla is a corporation duly organized and existing under the laws of the State of North Carolina with its principal place of business in Greenville, Pitt County, North Carolina. Banilla creates, designs, develops, and manufactures software, artwork, and audiovisual effects for various electronic games in various markets, including, but not limited to, the skill-based redemption market.

9.      Defendant, Mawfak Tawfiq, is an individual and, upon information and belief, a resident of North Carolina with his principal address at 6004 Millstone Drive, Durham, North

3

Carolina 27713. Tawfiq is, among other things, engaged in the ownership, sale, and distribution of counterfeit products purporting to be genuine Banilla products. These counterfeit products infringe upon Banilla's intellectual property rights and Tawfiq has profited from the unauthorized use of Plaintiff's copyrighted and trademarked material, as more fully described herein.

<u>**JURISDICTION AND VENUE**</u>

10. This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

11. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

12. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in North Carolina and in this district, has operated, distributed, or placed infringing products within this State and this district, has committed tortious acts within this State and this district, and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

13. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and under the provision of 28 U.S.C. § 1400(a) because Defendant resides in this district.

<u>**FACTUAL ALLEGATIONS**</u>

**I.      BANILLA'S BUSINESS AND INTELLECTUAL PROPERTY**

14. Since 2013, Banilla has invested millions of dollars in the development of its high-quality and reliable electronic games of skill. Multiple teams of dedicated in-house personnel,

acting within the scope of their employment, develop, from scratch, all design and software components of the FUSION Games. These components include, but are not limited to, the games' source code, object code, two-dimensional and other artwork, static images, and other visual and audiovisual effects that contribute to the distinctive and enjoyable user experience of the FUSION Games. All the artwork, static images, and audiovisual effects in the FUSION Games are original—i.e., created by the in-house game design teams—and none of that artwork, static images, and audiovisual effects are copied from any third-party source in the creation of these products.

15. Banilla manufactures and distributes a variety of skill-game and amusement devices, including the FUSION-branded devices, which are currently in their sixth iteration.

16. Banilla serves as the exclusive distributor of the FUSION Games. Through Banilla's distribution efforts, the FUSION Games, including the Copyrighted Works (as defined below), are made available to customers, who in turn place the FUSION Games in their respective places of business.

17. To obtain the FUSION Games, including the Copyrighted Works (as defined below), an individual or business must purchase the FUSION Games directly from Banilla or from an authorized reseller to whom Banilla has sold legitimate FUSION Games. No other channel of distribution is authorized by Banilla.

18. Banilla has invested substantial time, effort, and resources in developing, marketing, and distributing the FUSION Games to its customers and providing exemplary customer service to those customers who purchase legitimate copies of the FUSION Games.

19. Banilla's FUSION Games are highly regarded by Banilla's customers (e.g., the operators who purchase the games) and end users (e.g., the individuals who play the games), all

5

of whom have come to associate the FUSION Games and the Banilla Marks with high-quality products and superior customer service from Banilla.

20.     Banilla continues to invest heavily in the development and protection of its intellectual property and has consistently and vigorously protected and enforced those rights.

21.     In furtherance of its brand-building efforts, Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, continuously since February 6, 2014. The BANILLA GAMES Mark has been used in connection with the manufacture, distribution, offering for sale, sale, marketing, advertising, and promotion of products in the board, nudge, skill, redemption, and amusement game markets.

22.     Banilla is the owner of the intellectual property rights in the software for the FUSION Games, which consist of a series of game suites. These intellectual property rights include multiple federal copyright registrations issued by the United States Copyright Office for the computer files and associated audiovisual effects used in the FUSION line of video games, including, but not limited to, the following:

- Number PA0002206908, obtained on October 11, 2019, for Banilla's FUSION video game (the "**Fusion Copyrighted Work**").

- Number PA0002218349, obtained on October 11, 2019, for Banilla's FUSION 2 video game (the "**Fusion 2 Copyrighted Work**").

- Number PA0002218347, obtained on October 11, 2019, for Banilla's FUSION 3 video game (the "**Fusion 3 Copyrighted Work**").

- Number PA0002293309, obtained on May 24, 2021, for Banilla's FUSION 4 video game (the "**Fusion 4 Copyrighted Work**").

6

- Number PAu004088597, obtained on May 24, 2021, for Banilla's FUSION 5 video game (the "**Fusion 5 Copyrighted Work**").[1]

- Number PA0002559762, obtained on September 22, 2025, for Banilla's FUSION 6 video game (the "**Fusion 6 Copyrighted Work**");[2]

- Number PA0002368424, obtained on July 19, 2022, for Banilla's FUSION Link video game (the "**Fusion Link Copyrighted Work**").[3]

Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles, including, as relevant here, the game title "Plunderin' Pirates," Number PA0002533777, obtained on March 19, 2025 (the "**Plunderin' Pirates Copyrighted Work**"),[4] the game title "Terror Tavern," Number PA002551216, obtained on June 13, 2025 (the "**Terror Tavern Copyrighted Work**"),[5] the game title "Gorgon: Treasures of Greece," Number PA0002551204, obtained June 13, 2025 (the "**Gorgon Copyrighted Work**"),[6] the game title "Offshore Angler," Number PA0002537346, obtained on March 27, 2025 (the "**Offshore Angler Copyrighted Work**"),[7] and the game title "Topshot Golf," Number PA0002551916, obtained on June 26, 2025 (the "**Topshot Golf Copyrighted Work**").[8] Hereinafter, the above copyright works will be referred to collectively as the "**Copyrighted Works**."[9]

---

[1] Attached hereto as **Exhibit 2**.
[2] Attached hereto as **Exhibit 3**.
[3] Attached hereto as **Exhibit 4**.
[4] Attached hereto as **Exhibit 5**.
[5] Attached hereto as **Exhibit 6**.
[6] Attached hereto as **Exhibit 7**.
[7] Attached hereto as **Exhibit 8**.
[8] Attached hereto as **Exhibit 9**.
[9] Banilla also owns federal copyright registrations for the two-dimensional artwork used in its individual game titles including, but not limited to: the game title "Crumble Cave," Number VA0002173744, obtained on October 11, 2019 (the "**Crumble Cave Copyrighted Work**"), the game title "Bourbon Street Dice," Number VA0002184888, obtained on October 11, 2019 (the "**Bourbon Street Dice Copyrighted Work**"), the game title "Ticket to Ride," Number

Case 1:26-cv-00463-WO-LPA    Document 1    Filed 05/20/26    Page 7 of 30

23.     In addition, Banilla has continuously used the trademark "FUSION" in commerce throughout the United States, and in North Carolina, since at least as early as February 2017, in connection with the creation, distribution, offering for sale, sale, marketing, and promotion of its FUSION Games, including the Copyrighted Works at issue in this action. Attached hereto as **Exhibit 1** are representative samples of materials evidencing Banilla's use of the FUSION Mark in connection with the FUSION Games.

24.     Banilla obtained a state registered trademark for "FUSION" (the "**FUSION Mark**") and is the owner of North Carolina Trademark Registration T-24749 for the FUSION Mark in connection with "recorded computer software for playing games of skill" and "recorded computer application software for video gaming consoles and video gaming machines for playing games of skill," which is in full force and effect. The North Carolina Certificate of Registration is attached as **Exhibit 10**.

25.     Since their introduction, the FUSION Games have become among the most popular and widely recognized skill games available in the United States, enjoying widespread recognition and use by players, locations, route operators, and resellers. *See, e.g.,* https://banillagames.com/product-category/platforms/skill-games/fusion-series/; *see also* https://banillagames.com/product-category/platforms/skill-games/fusion-link/. As a result of Banilla's longstanding and continuous use of the FUSION Mark, and the consistently high quality of its goods and services offered thereunder, the FUSION Mark has acquired secondary meaning and become widely known and famous throughout the United States, including in North Carolina.

---

VA0002184964, obtained on October 11, 2019 (the "**Ticket to Ride Copyrighted Work**"), and the game title "Vegas Magic," Number VA0002184972, obtained on October 11, 2019 (the "**Vegas Magic Copyrighted Work**"). Hereinafter, the copyright registrations for these game titles will be referred to collectively as the "**Copyrighted Games**."

The FUSION Mark is closely and exclusively identified with Banilla and represents substantial and valuable goodwill belonging to Banilla.

26. By virtue of its widespread, continuous, and exclusive use of the FUSION Mark to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the single source of origin of those products, Banilla owns valid, protectable, and subsisting statutory and common law rights in and to the FUSION Mark.

27. Banilla is the owner of the following valid and subsisting United States Trademark Registrations on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

    a. "BANILLA GAMES," Registration No. 7,187,484, which registration issued on October 10, 2023, as shown in **Exhibit 11**.

    b. "PLUNDERIN' PIRATES," Registration No. 8,095,915, which registration issued on January 6, 2026, as shown in **Exhibit 12**.

    c. "PLUNDERIN' PIRATES (stylized)," Registration No. 8,202,393, which registration issued on April 7, 2026, as shown in **Exhibit 13.**

    d. "TERROR TAVERN," Registration No. 7,994,942, which registration issued on October 21, 2025, as shown in **Exhibit 14.**

    e. "OFFSHORE ANGLER," Registration No. 8,174,554, which registration issued on March 17, 2026, as shown in **Exhibit 15**.

    f. "GORGON TREASURES OF GREECE," Registration No. 8,174,555, which registration issued on March 17, 2026, as shown in **Exhibit 16.**[10]

---

[10] Banilla also owns, among others, the following valid and subsisting United States Trademark Registrations on the Principal Register of the USPTO: "CRUMBLE CAVE," Registration No. 8,157,384, which registration issued on March 3, 2026; "BOURBON STREET DICE,"

9

28. Banilla has used the BANILLA GAMES Mark in commerce throughout the United States, including North Carolina, continuously since at least February 16, 2014, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets. The registration for the BANILLA GAMES Mark covers the following goods and services:

> Recorded computer software for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer application software for video gaming consoles and video gaming machines for playing games of chance relating to games, card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [r]ecorded computer software for enabling social gaming by uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information regarding electronic gaming, entertainment, and general gaming interest via the Internet or other communications networks with third parties; [v]ideo gaming consoles for playing card games, slot games, video games, gaming, gambling, casino, bingo, instant win games, lottery and betting activities; [v]ideo gaming machines for playing computer games; [i]nstallation, maintenance, modification, and updating of electronic gaming and gambling systems being game machines and hardware; [p]roviding an internet site featuring news and information in the field of gaming; [e]ntertainment services, namely, providing online games of chance and social games being computer games; [e]ntertainment services, namely, conducting casino gaming contests and tournaments.

29. Banilla has used the PLUNDERIN' PIRATES Marks in commerce throughout the United States, including North Carolina, continuously since at least as early as August 16, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

---

Registration No. 8,165,445, which registration issued on March 10, 2026; and "VEGAS MAGIC," Registration No. 8,157,385, which registration issued on March 3, 2026.

30. Banilla has used the TERROR TAVERN Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

31. Banilla has used the OFFSHORE ANGLER Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as May 18, 2021, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

32. Banilla has used the GORGON TREASURES OF GREECE Mark in commerce throughout the United States, including North Carolina, continuously since at least as early as July 13, 2023, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of products for the board, nudge, skill, redemption, and amusement game markets.

33. As a result of the widespread, continuous, and exclusive use of the Banilla Marks in commerce to identify its products in the board, nudge, skill, redemption, and amusement game markets, and to identify Banilla as the source of those products, Banilla owns valid and subsisting federal statutory and common law rights in the Banilla Marks.

34. Banilla has made significant expenditures in promoting and marketing goods and services provided under the Banilla Marks. As a result of Banilla's exclusive use and promotion of the Banilla Marks in connection with its goods and services, Banilla has developed and now owns substantial and valuable goodwill symbolized by the Banilla Marks.

11

35.     As a direct result of these efforts, the goodwill and recognition that Banilla has established have enabled Banilla to achieve substantial sales of its products in the board, nudge, skill, redemption, and amusement game markets under the Banilla Marks throughout the United States.

36.     Banilla's Banilla Marks are distinctive and have acquired strong secondary meaning among both the consuming public and the relevant trade, including participants in the skill-based redemption game market.

37.     As a result of its significant investment in the promotion and marketing of the FUSION Games, Banilla has become recognized as a global leader in the electronic gaming industry. As a global leader, Banilla diligently protects its business and products through comprehensive intellectual property enforcement measures, including the registration of copyrightable works, registration of trademarks and service marks, protection of trade secrets, and other measures designed to safeguard its intellectual property rights. As a result of these efforts, Banilla has developed and owns substantial and valuable good will associated with the Banilla Marks.

**II.     DEFENDANT'S COUNTERFEITING AND INFRINGING ACTIVITIES**

*Copyright Infringement*

38.     Banilla is the exclusive distributor of the FUSION Games. Banilla sells FUSION Games to end users, who, in turn, use them in their places of business.

39.     Prior to Defendant's conduct detailed herein, consumers associated the FUSION Games with Banilla as their source of origin.

40.     On or about March 5, 2026, Plaintiff learned through its own due diligence that Defendant owned, publicly displayed, and offered for sale at least four (4) counterfeit, pirated, or

12

hacked versions of the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Terror Tavern Copyrighted Work, the Offshore Angler Copyrighted Work, the Topshot Golf Copyrighted Work, and the Gorgon Copyrighted Work, and allowed such counterfeit and unauthorized games to be used by his customers and purchasers (i.e., end users).

42. After learning of Defendant's Facebook Marketplace listings, Banilla exercised reasonable diligence to investigate and verify that Defendant's misconduct was occurring and continuing.

42. After learning of Defendant's actions, on April 17, 2026, Plaintiff caused a cease and desist letter to be sent to Defendant (the "**Cease and Desist Letter**"). The Cease and Desist Letter demanded, among other things, that Defendant immediately cease selling counterfeit Banilla products and turn over all counterfeit Banilla products in his possession, custody, or control.

43. Defendant, despite actual receipt of the Cease and Desist Letter, and being fully aware of the demands contained therein, has willfully ignored Plaintiff's demands and continues to offer counterfeit products for sale that infringe on Plaintiff's FUSION, BANILLA GAMES, PLUNDERIN' PIRATES, TERROR TAVERN, OFFSHORE ANGLER, and GORGON TREASURES OF GREECE Marks, as well as the Copyrighted Works.

44. Upon information and belief, Defendant purchased, sold, distributed, publicly displayed and/or otherwise exploited all the unauthorized, pirated, and/or hacked versions of the Copyrighted Works and Copyrighted Games on the secondary market (the "**Illicit Games**"). Neither the cabinets in which the Illicit Games were housed, if any, nor the Illicit Games therein were created, sold, or authorized or licensed by Banilla. Upon information and belief, Defendant

13

has purchased, sold, and/or vended additional Illicit Games, or has the means, motive, and capability to obtain, distribute, and exploit additional Illicit Games.



45.     The hacked/pirated/counterfeit Illicit Games are sold for significantly less than genuine products. A genuine game board for the Fusion 5 Game, for example, costs $4,995.00 and a full game board and cabinet costs approximately $10,000.00. Upon information and belief, Defendant paid significantly less for the Illicit Games and is offering the Illicit Games for sale at a price of $2,500.00 for a brand new game board.

46.     This model allows Defendant to undercut Banilla's market share, divert Banilla's profits, and increase Defendant's own profits at Banilla's expense. By purchasing Illicit Games at a substantially lower price, Defendant can maximize his profits by receiving a larger portion of gross revenue, and ultimately secure locations that would otherwise use Banilla's legitimate machines.

14

47. Defendant's Illicit Games are nearly identical to the Copyrighted Works and Copyrighted Games, in that they present the same game play and almost identical artwork. However, the Illicit Games perform at slower speeds than the Copyrighted Works, and the Illicit Games display dimmer, lower-quality artwork than that found in the Copyrighted Works. Additionally, the game board that runs the Illicit Games is designed in a completely different manner from Banilla's genuine game boards.

48. Banilla owns all right, title, and interest in and to the copyrights covering the audiovisual effects that tie together the artwork used in the Copyrighted Works, and in this instance, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, which effects depict a series of related images that, when shown in a sequence, impart an impression of motion and the expression fixed in motion.

49. In addition, Banilla owns all right, title, and interest in and to the copyrights covering the individual game titles "Terror Tavern," "Topshot Golf," and "Offshore Angler," that are incorporated into the Fusion 5 Copyrighted Work. Banilla also owns all right, title, and interest in and to the copyrights covering the individual game title "Gorgon: Treasures of Greece" that is incorporated into the Fusion 6 Game and the Gorgon Copyrighted Work, respectively. Similarly, Banilla also owns all right, title, and interest in and to the copyrights covering the individual game title "Plunderin' Pirates" that is incorporated into the Fusion Link 2 Game and the Plunderin' Pirates Copyrighted Work, respectively

50. The Copyrighted Works are wholly original works of authorship, and Banilla is the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Works and the owner of all the exclusive rights associated with those Copyrighted Works, including, but not limited to, the right to reproduce its software in copies and to distribute those copies to the public.

15

Additionally, 17 U.S.C. § 106(5) provides Banilla, as copyright holder for "motion picture or other audiovisual works," the exclusive right to display the work publicly.

51.     Without Banilla's authorization, consent, or knowledge, and without any compensation to Banilla, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit reproductions of the Copyrighted Works. Specifically, Defendant has published and publicly displayed unauthorized, unlicensed, and counterfeit versions of Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, and unauthorized, unlicensed, and counterfeit versions of the individual games; the Terror Tavern Copyrighted Work, Offshore Angler Copyrighted Work, Topshot Golf Copyrighted Work, Plunderin' Pirates Copyrighted Work, and the Gorgon Copyrighted Work.

52.     Defendant is marketing, distributing, and offering for sale the Illicit Games across the country, in an effort to replicate, or copy, the market footprint Banilla has spent years, and millions of dollars, developing.

*Trademark Infringement*

53.     Banilla also owns the BANILLA GAMES Mark, which appears at the start-up of each FUSION Game.

54.     Without authorization from Banilla, Defendant has used, likely among others, the Banilla Marks, or counterfeit and unauthorized imitations thereof that are confusingly similar to consumers and end users (the **"Infringing Marks"**), in commerce within the United States, in connection with the marketing, distribution, and operation of the Illicit Games.

55.     Defendant's Illicit Games are marketed as, among other types, skill games and distributed in skill game markets, just as Banilla markets and distributes. Indeed, the target market for both Banilla's products and services and Defendant's products and services are identical,

16

namely distributors and route operators, who will then make such games available to end users who play the games.

56. Defendant's infringing acts, as alleged herein, have caused and are continuing to cause confusion, mistake, and deception among the relevant consuming public as to the source of origin of Defendant's game boards and have and are continuing to deceive the relevant consuming public into believing, mistakenly, that Defendant's game boards originate from, are associated or affiliated with Banilla, or otherwise authorized by Banilla.

57. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

58. Defendant's Illicit Games are confusingly similar to authentic FUSION Games sold and distributed by Banilla, differing primarily in the speed of game play, the quality of the displayed artwork, and the internal design of the game board.

59. Each time an Illicit Game is placed, publicly displayed, or put into operation, and each time such a machine is started, Defendant employs the Infringing Marks.

60. Defendant's infringing actions, as alleged herein, have caused, or are likely to cause, confusion, mistake, and deception among the relevant consuming public (e.g., consumers and end users) as to the source, sponsorship, or affiliation of the Illicit Games, falsely suggesting an association with or endorsement by Banilla and deceiving the relevant consuming public into believing, mistakenly, that the Illicit Games originate from, are associated or affiliated with Banilla, or otherwise authorized by Banilla. The prominent uses of FUSION Games are made with the intent to trade on the goodwill associated with the Banilla Marks.

17

61. Defendant's uses create the false impression that his goods and services originate from Banilla, or that Banilla is somewhat connected or associated with, or sponsors, Defendant's goods and services, so as to deceive customers or to cause confusion or mistake as to the origin or affiliation of Defendant's and Banilla's goods and services.

62. Defendant's uses are diluting the distinctive quality of Banilla's famous FUSION Mark and the Banilla Marks. The attempted association of the Banilla Marks with Defendant's goods and services blurs the distinctive character and tarnishes the reputation of Banilla's famous FUSION Mark and the Banilla Marks.

63. Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla and to its valuable reputation and goodwill with the consuming public for which Banilla has no adequate remedy at law.

*Damages from Copyright and Trademark Infringement*

64. As a result of Defendant's actions, Banilla has been damaged, and continues to be damaged, by the unauthorized publication and public display of counterfeit versions of the Copyrighted Works, including, but not limited to, the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Gorgon Copyrighted Work, the Topshot Golf Copyrighted Work, Offshore Angler Copyrighted Work, and the Terror Tavern Copyrighted Work. Furthermore, Banilla has been damaged, and continues to be damaged by Defendant's unauthorized use of the Infringing Marks.

65. Defendant has never accounted to or otherwise paid Banilla for his improper, illegal, and unauthorized use of counterfeit versions of the Copyrighted Works or the Banilla Marks.

18

66. Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

67. Defendant's infringement has been and continues to be willful, intentional, and with reckless disregard for Plaintiff's rights, entitling Plaintiff to enhanced damages.

68. Defendant's acts have caused, and will continue to cause, Banilla to lose profits.

69. Consumers likely will associate Defendant's Illicit Games with Banilla because, *inter alia*, Defendant's Illicit Games mimic in every way the experience provided by the FUSION Games.

70. Defendant has engaged in an unfair method of competition and unfair trade practice. In fact, Defendant is intentionally "palming off" his Illicit Games as if they were authentic, or otherwise authorized, Banilla products in order to create consumer confusion, while capitalizing from Banilla's stellar reputation for quality products and service.

71. Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate remedy at law.

72. Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on Banilla's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Banilla's authentic FUSION Games to the Defendant.

**COUNT I**
**Copyright Infringement Pursuant to 17 U.S.C. §§ 106, 501**

73. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

74. The Copyrighted Works and the incorporated Copyrighted Games, namely the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work, are motion

19

picture/audiovisual effects containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

75. Banilla is the exclusive owner of all exclusive rights under copyright in the Copyrighted Works. Banilla owns valid copyright registrations, issued by the United States Copyright Office, for the Copyrighted Works, specifically the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work. *See* **Exhibits 2-9**.

76. Multiple teams of dedicated in-house personnel, acting within the scope of their employment, created the Copyrighted Works. None of these employees have any contractual rights to ownership of the Copyrighted Works and, as such, the Copyrighted Works constitute works made for hire.

77. Banilla is the owner of all rights, title, and interest in and to the asserted copyrights underlying the Copyrighted Works.

78. The Copyrighted Works were registered within five (5) years of the first publication of the Copyrighted Works.

79. By making the Illicit Games available for use by end users, Defendant has publicly displayed and published pirated, hacked, and/or counterfeit copies of the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work, and has done so without Banilla's permission.

20

80. As a direct and proximate result of Defendant's infringement of Banilla's Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work, and pursuant to 17 U.S.C. § 503(a), this Court "may order the impounding . . . (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner; . . . (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court."

81. As a direct and proximate result of Defendant's infringement of Banilla's copyrights, Banilla is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c)(1), in an amount of up to $30,000.00, or up to $150,00.00 for a willful infringement, per copyright violation, with respect to Defendant's infringing use of the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work, or such other amount as may be appropriate under 17 U.S.C. § 504(c). Alternatively, at Banilla's election, pursuant to 17 U.S.C. § 504(b), Banilla shall be entitled to its actual damages, including Defendant's profits from the infringements, as will be proven at trial.

82. Banilla is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 for Defendant's willful infringement.

83. In all events, Defendant's acts are causing, and, unless restrained, will continue to cause damage and immediate irreparable harm to Banilla, for which Banilla has no adequate

remedy at law. Banilla is thus entitled to impoundment of the Illicit Games, preliminary injunction, and permanent injunction.

**COUNT II**
**Federal Trademark Infringement**
**Pursuant to 15 U.S.C. § 1114**

84.    Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

85.    Banilla owns the U.S. trademark registrations for the BANILLA GAMES, PLUNDERIN' PIRATES, TERROR TAVERN, OFFSHORE ANGLER, and GORGON TREASURES OF GREECE Trademarks listed in **Exhibits 11-16**.

86.    Defendant's use of the Banilla Marks to promote the sale of goods differing materially from authorized goods sold under the Banilla Marks (e.g., the Illicit Game(s)) is likely to cause confusion, deception, and mistake by creating the false and misleading impression that those goods are materially identical to his authorized counterparts.

87.    Defendant's use of the Banilla Marks violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Banilla's goodwill and reputation as symbolized by the Banilla Marks, for which Banilla has no adequate remedy at law.

88.    Defendant has caused, and is likely to continue causing, substantial injury to the public and to Banilla, and Banilla is entitled to injunctive relief and to recover Defendant's profits, as well as Banilla's actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

22

## COUNT III
### False Designation of Origin and
### Unfair Methods of Competition Pursuant to 15 U.S.C. § 1125

89.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

90.     Banilla is the exclusive distributor of the FUSION Games, which games are sold by Banilla as either software boards or in freestanding gaming cabinets.

91.     Defendant has marketed, publicly displayed, presented, and offered for use to consumers the Illicit Games, which mimic the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, and the Fusion Link Copyrighted Work, in interstate commerce. The Illicit Games were neither authorized, created, sold, licensed, sponsored, nor distributed by Banilla.

92.     Defendant is passing off the Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla.

93.     Defendant's Illicit Games are likely to cause confusion, mistake, or deception of the consuming public as to the origin, source, sponsorship, or affiliation of the Illicit Games. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

94.     By his unauthorized conduct, use of counterfeit copies of the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Terror Tavern Copyrighted Work, Plunderin' Pirates Copyrighted Work, Gorgon Copyrighted Work, Topshot Golf Copyrighted Work, and Offshore Angler Copyrighted Work, and unauthorized use of Plaintiff's Banilla Marks, Defendant has engaged in unfair competition with Banilla, false

23

designation of origin, and misleading description and representation of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a).

95.     Banilla is entitled to an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees and costs, under 15 U.S.C. §§ 1117, as well as pre- and post-judgment interest.

96.     Defendant's conduct is causing immediate and irreparable harm and injury to Banilla, and to its goodwill and reputation, and will continue to both damage Banilla and confuse the public unless enjoined. Banilla has no adequate remedy at law. Banilla is thus entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

**COUNT IV**
**N.C. Gen. Stat. § 75-1.1**

97.     Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

98.     Defendant's actions in passing off his Illicit Games as those authorized, created, licensed, sold, and/or distributed by Banilla are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Illicit Games, thereby causing harm to the reputation and goodwill of Banilla. Defendant's uses without the consent of Banilla occurred in North Carolina, among other places.

99.     Defendant's unfair or deceptive acts or practices were in or affecting commerce, as that term is defined under N.C. Gen. Stat. § 75-1.1.

100.     Defendant's unfair or deceptive acts or practices proximately caused Banilla to suffer a loss.

24

101. Defendant has profited and been unjustly enriched by revenue from the Illicit Game(s) that Defendant would not otherwise have made but for his unlawful conduct.

102. Pursuant to N.C. Gen. Stat. § 80-12, Plaintiff's violation of N.C. Gen. Stat. § 80-11 constitutes a *per se* violation of § 75-1.1.

103. Banilla has been damaged by Defendant's passing off and unfair or deceptive acts or practices.

104. Banilla is entitled to have any recovery from Defendant trebled under N.C. Gen. Stat. § 75-16.

105. In all events, Defendant's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Banilla for which Banilla has no adequate remedy at law. Banilla is thus entitled to an injunction.

106. As a result of Defendant's passing off and unfair trade practices, Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, and treble damages under N.C. Gen. Stat. §§ 80-11, 80-12. 75-1.1, and 75-16.

## COUNT V
### North Carolina Statutory and Common Law Trademark Infringement

107. Banilla re-states, re-alleges, and incorporates the foregoing paragraphs by reference as if fully stated herein.

108. This claim is for statutory and common law trademark infringement against Defendant based on his sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games bearing the FUSION Mark, which activities violate the North Carolina Trademark Registration Act, N.C. Gen. Stat. § 80-1 *et seq.* and are actionable under N.C. Gen. Stat. § 80-11.

109. Banilla holds a state registered trademark for the FUSION Mark and is the owner of North Carolina Trademark Registration T-24749 for the FUSION Mark in connection with "recorded

25

computer software for playing games of skill" and "recorded computer application software for video gaming consoles and video gaming machines for playing games of skill," which is in full force and effect.

110. Defendant, without authority, has used and is continuing to use the unauthorized use of the FUSION Mark, and counterfeit imitations thereof, in connection with the sale, offering for sale, use, placement, marketing, and/or public display of the Illicit Games, thereby inducing Defendant's customers and/or clients, and others, to believe, contrary to fact, that the Illicit Games placed/sold by Defendant emanate or originate from Banilla, or that Banilla has approved, permitted, licensed, or otherwise associated itself with Defendant and his Illicit Games. Defendant's acts have damaged, impaired, and diluted the goodwill symbolized by the FUSION Mark, to Banilla's immediate and irreparable damage.

111. Actual and potential consumers, upon encountering Defendant's Illicit Games, are likely to be confused about the source of origin of the Illicit Games and will likely mistakenly believe that Defendant's Illicit Games originate with, or are sold, licensed, approved, sponsored by, or otherwise affiliated with Banilla.

112. Defendant's unauthorized use of the FUSION Mark or counterfeit imitations thereof, which are either identical or confusingly similar to the Banilla Mark, in connection with the advertising and sale of FUSION Games or Illicit Games, is likely to cause confusion, mistake, or deception as to the source of Defendant's Illicit Games and constitutes infringement of the FUSION Mark under the statutory and common law of North Carolina.

113. Defendant has used the FUSION Mark on his Illicit Games that were not manufactured by or authorized by Banilla, and, therefore, Defendant has deliberately attempted to deceive and mislead consumers.

114. Defendant, through his continued and unauthorized use of the FUSION Mark, is unfairly benefiting from and misappropriating Banilla's goodwill and reputation, resulting in serious, substantial, and irreparable injury to Banilla and the public.

115. Defendant's infringement has been and continues to be willful, intentional, and with reckless disregard for Plaintiff's rights, entitling Plaintiff to enhanced damages.

116. Banilla is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, and treble damages under N.C. Gen. Stat. §§ 80-11, 80-12. 75-1.1, and 75-16.

WHEREFORE, for the reasons stated above, Plaintiff Banilla Games, Inc., prays to the Court as follows:

1. For judgment that Defendant, Mawfak Tawfiq:

   (a) Has violated the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

   (b) Has violated Section 32(1) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (c);

   (c) Has engaged in unfair competition in violation of the common law of North Carolina and N.C. Gen. Stat. § 75.1-1;

   (d) Has engaged in trademark infringement in violation of the common law and the North Carolina Trademark Registration Act, N.C. Gen. Stat. § 80-1, *et seq.*

2. That an injunction be issued enjoining and restraining Defendant, Mawfak Tawfiq, and each of his officers, agents, employees, attorneys, and all those in active concert or participation with him from:

27

(a) Defendant's continued use, publication, and display of the BANILLA GAMES Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the TERROR TAVERN Mark, the OFFSHORE ANGLER Mark, and the GORGON TREASURES OF GREECE Mark;

(b) Defendant's continued use, publication, and display of the Copyrighted Works, namely the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Gorgon Copyrighted Work, the Terror Tavern Copyrighted Work, the Topshot Golf Copyrighted Work, and the Offshore Angler Copyrighted Work;

(c) Defendant's continued deceptive practices, including marketing or passing off the Illicit Games in interstate commerce; and

(d) Defendant's use of Banilla's trademarks, intellectual property, and confidential information, including the Illicit Games.

3. For the entry of an order directing Defendant, Mawfak Tawfiq, and all other persons, firms, or corporations in active concert or privity or in participation with Defendant, to deliver up to Banilla all products, advertisements, promotional materials, packaging, and other items in his possession or under his control bearing the Copyrighted Works, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118, 17 U.S.C. § 503(b), and N.C. Gen. Stat. § 66-152, *et seq*.

4. For an assessment of actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 17 U.S.C. § 504(c) in an amount not less than $1,200,000.00 for Defendant's willful

28

infringement of the Copyrighted Works, namely the Fusion 5 Copyrighted Work, the Fusion 6 Copyrighted Work, the Fusion Link Copyrighted Work, the Plunderin' Pirates Copyrighted Work, the Gorgon Copyrighted Work, the Terror Tavern Copyrighted Work, the Topshot Golf Copyrighted Work, and the Offshore Angler Copyrighted Work.

5. For an assessment of: actual damages, plus the amount of Defendant's profits attributable to the infringement(s), or in the alternative, an assessment of statutory damages, as authorized by 15 U.S.C. § 1117(c) in an amount not less than $12,000,000.00 for Defendant's willful infringement of the BANILLA GAMES Mark, the PLUNDERIN' PIRATES Mark, the PLUNDERIN' PIRATES (stylized) Mark, the TERROR TAVERN Mark, the OFFSHORE ANGLER Mark, and the GORGON TREASURES OF GREECE Mark.

6. For an assessment of: (a) damages suffered by Banilla, pursuant to 15 U.S.C. § 1117(a); (b) an award of Banilla's costs and attorneys' fees to the full extent provided for by 15 U.S.C. § 1117 and 17 U.S.C. § 505; and (c) profits, damages, and fees, to the full extent available, pursuant to N.C. Gen. Stat. § 75-16.

7. For a judgment against Defendant in an amount to be determined at trial, but not less than $13,200,000.00 plus interest and costs as allowed by law.

8. For damages awarded to Banilla as allowed by law for Defendant's willful infringements.

9. For costs and reasonable attorneys' fees, as allowed by law.

10. That Banilla per its demand have trial by jury on all claims and issues so triable.

11. For such other and further relief as the Court may deem just and proper.

This the 20th day of May 2026.

s/James B. Gatehouse
James B. Gatehouse
N.C. State Bar No. 22811
Whiteford, Taylor & Preston LLP
Two Morrocroft Centre
4064 Colony Road, Suite 315
Charlotte, North Carolina 28211
Telephone:     (980) 242-5001
Facsimile:     (980) 242-5019
E-Mail:         jgatehouse@whitefordlaw.com

*Counsel for Plaintiff Banilla Games, Inc.*

30